UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:12CV0039-RLV-DCK

| | |
|---|---|
| **ECR SOFTWARE CORPORATION,** )<br>)<br>Plaintiff(s),   )<br>)<br>vs.   )<br>)<br>**RENE ZALDIVAR,**   )<br>Defendant(s).   ) | **Memorandum and Order** |

**THIS MATTER** is before the Court upon motion of the Plaintiff ECR Software Corporation (hereinafter "ECRS" or "Plaintiff"), to remand this matter to state court pursuant to 28 U.S.C. § 1447(c). (Doc. 4).

## I.  FACTUAL AND PROCEDURAL HISTORY

This civil action arises from an employment dispute between ECRS and its former National Sales Manager, Renè Zaldivar (hereinafter "Zaldivar" or "Defendant") originally filed in Watauga County Superior Court on December 23, 2011. (*See* Doc. 4/ Pls.' Motion to Remand, Exh. E).

The facts as recited in Plaintiff's Amended Complaint are as follows. (*See id.*) ECRS is a North Carolina corporation with its principal place of business in Watauga County, North Carolina. (*Id.* at ¶ 1). At all relevant times, ECRS was and is in the business of the design and development of automated software and hardware systems for the retail industry. (*Id.*) Zaldivar is a citizen and resident of Broward County, Florida, (*id.* at ¶ 3) and was employed by ECRS from October 1, 2009, until June 30, 2011, when Zaldivar was terminated. (*See id.* at ¶ 9, 20, 24). The parties are at variance over the reason for termination. Zaldivar contends the reasons

1

for termination were discrimination based on his national origin and "retaliation against him for speaking with his boss about 'women and minorities.'" (*Id.* at ¶ 25). ECRS denied these claims, and contends the reasons for termination were violations of the signed Employment Agreement ("Agreement") in which Zaldivar "performed unsatisfactory or careless work; discussed salary, compensation, or bonuses with other employees; participated in malicious gossip and/or spreading rumors, and engaged in behavior that was designed to create discord and lack of harmony." (*Id.* at ¶ 32).

On July 22, 2011, Defendant filed a Charge of Discrimination with the Miami District office of the U.S. Equal Employment Opportunity Commission ("EEOC").[1] (*See id.* at ¶ 25). ECRS responded to the charge, and requested that the EEOC transfer the investigation to the Charlotte Division of the EEOC pursuant to the forum selection clause within the Agreement signed by Zaldivar.[2] (*Id.* at ¶ 26).

On December 23, 2011, ECRS filed suit, charging one breach of contract claim and two claims for declaratory judgment pursuant to N.C. GEN. STAT. § 1-254 and the North Carolina Equal Employment Practices Act ("EEPA"), N.C. GEN. STAT. § 143-422.2. (*See* Doc. 4/ Pls.' Motion to Remand, Exh. B). On April 10, 2012, Zaldivar's Florida counsel sent ECRS a letter to tender his "Notice of Appearance" and proposed a stay of the North Carolina case. (*See id.* at Exh. C).

---

[1] It is not clear from the record what happened with Zaldivar's Miami EEOC charge. After informal inquiry of counsel by chambers' staff, the Court is still unable to ascertain whether a "right-to-sue" letter ever issued. The Court notes that a Plaintiff, or as in this case, Defendant Zaldivar as Counter-Plaintiff must exhaust administrative remedies for the court to have subject matter jurisdiction over the Title VII issues raised in the counterclaim. *See Wake Case, Inc. v. Wake County Bd of Educ.*, 660 S.E.2d 217, 24 (N.C.App. 2008).

[2] There was never any transfer of the Miami EEOC charge to the Charlotte Division of the EEOC and Defendant did not commence litigation in any Florida court subsequent to filing his EEOC charge.

2

On April 12, 2012, ECRS agreed to the stay pending the EEOC investigation once ECRS' counsel filed an imminent Amended Complaint. (*See id.* at Exh. D). On April 13, 2012, ECRS filed an Amended Complaint. (*See id.* at Exh. E). ECRS' Amended Complaint added a second count of breach of contract for the alleged violation of the non-solicitation provision of the Agreement. ECRS contends that Zaldivar solicited business from ECRS customers to a competitor company, ProAct, owned by Zaldivar, which violated the Agreement's implied covenants of good faith and fair dealing.[3] (*Id.* at ¶ 43-49). ECRS alleges that Zaldivar, while still employed by ECRS, solicited customers, and represented to customers that ProAct was a preferred sales training vendor for ECRS. (*See id.* at ¶ 44-45).

On April 13, 2012, Zaldivar filed Notice of Removal with this Court. (*See* Doc. 1/ Def.'s Notice of Removal). In the notice of removal, Zaldivar asserted that this Court had original jurisdiction pursuant to 28 U.S.C. §§1331 and 1441, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (*See id.*)

On May 13, 2012, ECRS filed a Motion to Remand to state court on the basis that there is no federal question jurisdiction because ECRS' cause of action arises exclusively under state and local law. (*See* Doc. 4/ Pls.' Motion to Remand).

## II.     STANDARD OF REVIEW

"The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." *Chris v. Tenet*, 221 F.3d 648,

---

[3] Prior to becoming a National Sales Manager for ECRS, Zaldivar was Founder and CEO of ProAct Business Development USA, Inc. ("ProAct"). (*See* Doc. 4/ Pls.' Motion to Remand, Exh. E at ¶ 37). ProAct provides sales training for technology companies throughout the United States and is a competitor of ECRS. (*Id.* at ¶ 38-40) As a result of the nature of the businesses, ECRS got assurances from Zaldivar that he was no longer an officer of ProAct, and his only interest in the corporation was owner/investor. (*Id.* at ¶ 41) During the employment negotiations, the parties agreed to have non-compete covenants that involved "point of sale or the like." (*Id.*) Zaldivar then promised not to solicit ECRS customers or steer ECRS business to ProAct. (*Id.* at ¶ 43).

655 (4th Cir. 2000) (*citing Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Title 28, United States Code, Section 1441(a) (the "removal statute"), provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court ***of which the district courts of the United States have original jurisdiction***, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (*emphasis added*). Thus, the removal statute requires that this federal district court have "original jurisdiction" over the matter. *Id*.

Courts must strictly construe removal jurisdiction and resolve all doubts in favor of remand. *Strawn v. AT&T Mobility, LLC*, 530 F.3d 293, 297 (4th Cir. 2008) (applying "long-standing tradition of strictly construing removal jurisdiction" and principle that "doubts about jurisdiction are resolved in favor of remand to state court"); *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994).

For jurisdiction to exist under 28 U.S.C. § 1331, a well-pleaded complaint must reveal a federal question. *See Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). The plaintiff is the master of his claim and normally may avoid federal jurisdiction by relying exclusively on state law. *See id*. "Jurisdiction may not be sustained on a theory that the plaintiff did not advance." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 809, n. 6 (1986). Under this "well-pleaded complaint rule," federal courts have jurisdiction to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State California v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 27-28 (1983).

Pursuant to 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Nonetheless, 28 U.S.C. § 1367(c) permits district courts to decline supplemental jurisdiction over a claim under subsection (a) if "the claim raises a novel or complex issue of State law," or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. §§ 1367(c)(1) and (4). If the district court has only supplemental jurisdiction over Plaintiff's claims, the district court has discretion to decide whether to remand the case to state court, or permit the case to stay in federal court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

### III. ANALYSIS

#### A. Discussion of Plaintiff's claims

Plaintiff contends that it is entitled to remand back to Watauga Superior Court because there is no federal question jurisdiction to satisfy removal to this Court. Plaintiff's Amended Complaint alleges two claims of breach of contract, as well as two claims for declaratory judgment. Only count three—Plaintiff's claim for declaratory judgment as to the lawfulness of Defendant's termination—is the basis for Defendant's argument that a federal question of employment discrimination pursuant to Title VII exists.

Plaintiff seeks a declaration pursuant to the EEPA that it had cause to terminate Defendant; that the cause was legitimate, non-discriminatory and non-retaliatory; that it did "not limit, restrict, or abridge any terms or conditions" of Defendant's employment based on national origin; and that Defendant was not engaged in a protected activity such that his termination would constitute retaliatory action by Plaintiff. Plaintiff also seeks a declaration that Plaintiff did

5

not engage in any discriminatory behavior towards women or other minorities. (*See* Doc. 4/Pls.' Motion to Remand, Exh. E at ¶ 60). Defendant however, contends that removal to this Court is proper based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 and alternatively, diversity jurisdiction pursuant to 28 U.S.C. § 1332. This court will first consider Defendant's argument that there is a federal question present pursuant to 28 U.S.C. § 1331.

### B. Federal Question, 28 U.S.C. § 1331

The federal courts have subject matter jurisdiction over cases "arising under" the Constitution, statutes, or treaties of the federal government. 28 U.S.C. § 1331. In determining whether a cause of action "arises under" federal law, the Court shall look to the plaintiff's "well-pleaded complaint." *See Franchise*, 463 U.S. 1, 9-10. In other words, it must be clear from the face of the complaint either that 1) plaintiff's "cause of action 'arises under' federal law;" or 2) a federal law is "an element, and an essential one of plaintiff's cause of action." *See id.* at 11 (*citing Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 154 (1908))(*citing Gully v. First Nat'l Bank,* 299 U.S. 109, 112 (1936)).

In considering the second method for creating federal question jurisdiction, jurisdiction may exist over a state law claim if "the state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir.1996); *Merrell Dow*, 478 U.S. 804 (1986) (The federal law in question must be "sufficiently central" to the claim in a well-pled complaint.)

Moreover, federal question jurisdiction is not established by the existence of a federal counterclaim or defense. *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1272 (2009) (jurisdiction

cannot rest on an actual, anticipated or compulsory counterclaim); *Holmes Group v. Vornado Air Circulation Sys.*, 535 U.S. 836 (2002); *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir.), *cert. denied* 549 U.S. 1260 (2007)).

The burden of establishing federal subject matter jurisdiction is on the party asserting it. *See Kokkohen*, 511 U.S. 375, 377 (1994) (*citing Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 1799); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936.))

The Court examines the "subject matter jurisdiction that existed at the time the notice of removal was filed.[4] *See Dantzler v. Nationwide Credit, Inc.,* 1999 WL 1939258 *2 (M.D.N.C; *see also Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914) (laying out the "well-pleaded complaint rule" in which subject matter jurisdiction is "determined from what...appears in the plaintiff's statements of his own claim...unaided by anything alleged in anticipation or avoidance of defenses which is thought the defendant may interpose.")

Defendant removed this case pursuant to 28 U.S.C §§ 1331 and 1441(b).[5] In considering Defendant's basis of removal, the burden is on Defendant to establish federal jurisdiction. However, "jurisdiction may not be sustained on a theory that the plaintiff has not advanced" because Plaintiff is the "master of his complaint." *Pendergraph v. Honda-Volvo, LLC.*, 104

---

[4] Plaintiff filed the original Complaint on December 23, 2011. Plaintiff then filed an Amended Complaint on April 13, 2012. While both the Amended Complaint and Notice of Removal were docketed on April 13, 2012, Plaintiff alleges it filed the Amended Complaint before Defendant was able to file a Notice of Removal. As such, this Court will be looking at the claims held within the Amended Complaint.

[5] 28 U.S.C § 1441(b) relates to removal based on citizenship diversity and states "(1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332 (a) of this title (2) a civil action otherwise removable on the bases of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." To establish diversity jurisdiction in this Court, we must look at the pertinent section of 28 U.S.C. § 1332(a)(1) which states, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between, (1) citizens of different states;..."

F.Supp. 2d 586, 588 (M.D.N.C. 1999) ((*citing Merrell Dow*, 478 U.S. at 809 n. 6 (*citing Caterpillar,* 482 U.S. at 392).

Within Plaintiff's Amended Complaint, Plaintiff relies only on North Carolina law as the basis of the claims and relief sought. Of Plaintiff's four causes of action, two are allegations for breach of contract, which fall within the purview of North Carolina contract law, and two are claims for declaratory judgment pursuant to N.C. GEN. STAT. § 1-254 and the EEPA. Plaintiff does not allege any federal claims as such within the literal parameters of 28 U.S.C. § 1331. Defendant alleges that Plaintiff's attempt to seek declaratory judgment as to the cause of termination in count three is related to his EEOC filing. (*See* Doc. 1/ Def.'s Notice of Removal). It follows, Defendant argues, that Plaintiff's claims arise or relate to his Title VII claims pursuant to 42 U.S.C. § 1981.[6] (*See* Doc. 4/ Def.'s Answer and Counterclaim ¶ 19). Furthermore, Defendant argues that as a result of the EEOC filing federal jurisdiction was created, and subsequently, this Court has supplemental jurisdiction over Plaintiff's remaining claims. Defendant encourages this court to look beyond Plaintiff's complaint to see if there is a federal cause of action. (*See id.*)

While Plaintiff's Amended Complaint does not expressly allege a federal cause of action, according to Defendant, count three describes in substance a claim which can only be resolved under Title VII. Plaintiff's Amended Complaint does acknowledge Defendant's EEOC filing. However, this mere mention of Defendant filing an EEOC claim does not, in and of itself, create federal jurisdiction. *See Pendergraph*, 104 F.Supp.2d at 588. Plaintiff's Amended Complaint seeks declaratory judgment pursuant to the North Carolina Equal Employment Practices Act

---

[6] Title 42, United State Code, Section 1981, which provides for equal rights generally, reads in pertinent part, "All persons within the jurisdiction of the United States shall have the same right. . .to make and enforce contracts . . .as is enjoyed by white citizens. . ."42 U.S.C. § 1981(a).

("NCEEPA"), codified at N.C. Gen. Stat. § 143-442.1 *et seq.*, which provides that, "it is the public policy of this State to protect…employment without discrimination …." *Id.*[7] This Court, as others before it, will assume that N.C. GEN. STAT. § 143-422.2 "creates a private state law cause of action for the forms of employment discrimination embraced by it, rather than a mere policy statement." *Newton v. Lat Purser and Assoc., Inc*, 843 Supp. 1022, 1024 (W.D.N.C. 1994). As a result, remand to state court is appropriate. Additionally, it should be noted that "state law claims for employment discrimination or harassment" are not preempted by Title VII, unless the state law is inconsistent with Title VII. *See Dantzler,* 1999 WL 1939258 (M.D.N.C).

It is evident from the facts of Plaintiff's Amended Complaint that there are no allegations relating to federal law. Plaintiff's Amended Complaint makes specific references to North Carolina state law, and not to Title VII or any other federal law. There is no support for the proposition that the federal law in question, Title VII, is "sufficiently central" to Plaintiff's well-pleaded Amended Complaint that a federal question is present. Plaintiff is pursuing relief wholly under state law. Therefore, the Court will remand the case pursuant to 28 U.S.C. § 1447(c).

1. **Declaratory Judgment, N.C. GEN. STAT. § 1-254**

In considering Defendant's contention that Plaintiff's claims for declaratory judgment actually stem from Defendant's Title VII EEOC filing, this Court must look at the North Carolina Declaratory Judgment Act. The Act states,

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any

---

[7] In interpreting this charge, North Carolina courts "have recognized a private right of action under this "public policy" only where the alleged discrimination resulted in termination." *Ravan v. Forest Pharms., Inc.,* 2009 WL 1152190 (W.D.N.C. 2009) (citing *Whitt v. Harris Teeter, Inc.*, 359 N.C. 625 (2005)); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (explaining that the Fourth Circuit Court of Appeals construes NCEEPA in the same manner; the public policy is consistent with common law wrongful discharge action).

> question of construction or validity arising under the instrument, statute, ordinance, contract or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

N.C. GEN. STAT. § 1-254 (2009).  There is well established case history that shows that the purpose of the Declaratory Judgment Act is "to settle and afford relief from uncertainty and insecurity, with respect to rights, status, and other legal relations." *Coca-Cola Bottling Co Consol. v. Durham Coca-Cola Bottling Co*, 541 S.E.2d. 157, 162 (N.C.App. 2000) (*quoting Walker v. Phelps*, 202 N.C. 344, 349 (1932)).  The Declaratory Act shall "be liberally construed, and administered."  *Id.; see Klingspor Abrasives, Inc. v. Woolsey,* 2009 WL 239788 (W.D.N.C.) (*quoting N. Carolina Consumers Power, Inc. v. Duke Power Co.,* 206 S.E.2d 178, 186 (1974)).  When addressing the requirements for jurisdiction in a declaratory judgment suit, a court "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding…"  N.C. GEN. STAT. § 1-257 (2009).  Moreover, the North Carolina Supreme Court has held that:

> It is required only that the plaintiff shall allege in his complaint and show at the trial that a real controversy, arising out of their opposing contentions as to their respective legal rights and liabilities under a deed, will, or contract in writing, or under a statute, municipal ordinance, contract, or franchise, exists between or among the parties, and that the relief prayed for will make certain that which is uncertain and secure that which is insecure.

*Carolina Power & Light Co. v. Iseley*, 167 S.E. 56, 61 (1933) (*citing Walker*, 162 S.E.2d 727, 727 (1932)).  "A party must show in the complaint that litigation appears unavoidable." *Klingspor*, 2009 WL 239788 (*quoting Wendell v. Long*, 418 S.E.2d. 825, 826 (N.C.App. 1992)).  Often, the Act is used to prevent further injury to the Plaintiff or to clarify legal rights.  *Id.*

Presently, Plaintiff is seeking declaratory judgment as to the lawfulness of termination which "arises out of" the breach of contract claim.  (*See* Doc. 4/ Pls.' Motion to Remand, Exh. E)

In order to satisfy the Act, Plaintiff's Amended Complaint must allege an actual controversy between the parties. Plaintiff alleges that Defendant violated the signed employment contract resulting in a breach of contract. Here, Plaintiff's asserted reason for termination arises out of the breach of contract claims. Plaintiff's litigation of the breach claims requires the court to make a decision as to the lawfulness of the termination of Defendant, as well as the enforceability of the choice of forum clause within the Agreement. Defendant's contention that Plaintiff's filing arose out of his EEOC filing is misguided. In other words, the Miami, Florida EEOC proceeding, in and of itself, has no bearing on the issues raised here. Therefore, Plaintiff seeking declaratory judgment as to the lawfulness of termination is permissible.

Second, Plaintiff's Amended Complaint alleges Plaintiff is currently suffering damages as a result of Defendant soliciting Plaintiff's customers. If the allegations within the Amended Complaint are taken as true, Plaintiff does have rights that need to be protected to prevent the accrual of damages. Therefore, Plaintiff filing for declaratory judgment for claims arising out of the Employment Agreement would serve to protect any rights of Plaintiff.

### 2. Alternative Theory—Diversity Jurisdiction, 28 U.S.C. § 1441(b)

Lastly, Defendant contends federal subject matter jurisdiction is satisfied through diversity jurisdiction. (Doc. 7/Def.'s Answer/Counterclaim).

In order to invoke subject matter jurisdiction pursuant to 28 U.S.C. § 1441(b), the matter in controversy must exceed at least $75,000, exclusive of interest and cost, and must be "between citizens of different states..." 28 U.S.C. § 1332(a)(1). Using the same standard as mentioned above, the party seeking removal has the burden establishing it. *See Kokkohen*, 511 U.S. 375, 377 (citing *Turner*, 4 U.S. at 8; *McNutt*, 298 U.S. at 182-183).

When invoking removal based on diversity of citizenship, the Court must look to 28 U.S.C. § 1446(c). Pursuant to 28 U.S.C. § 1446(c), removal on the basis of diversity jurisdiction must occur within one year after the commencement of the case as conferred by § 1332. 28 U.S.C. § 1446(c)(2)(A) states:

> removal of a civil action sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—(A) the notice of removal may assert the amount in controversy if the initial pleading seeks—(i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded…

Additionally, 28 U.S.C. § 1446(c)(2)(B) states that a district court may find, "by a preponderance of the evidence, that the amount in controversy exceeds the amount specified in §1332(a)." Moreover, if the case is not removable solely because the initial pleading does not state amount in excess of the amount specified in 28 U.S.C. §1332(a), the Court may look to information found in the record of the State proceeding, or in response to discovery. 28 U.S.C. § 1446(c)(3)(A). Lastly, "if the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to prevent removal, that finding shall be deemed bad faith…" 28 U.S.C. § 1446(c)(3)(B).

Presently, both parties acknowledge that the citizenship of the parties is diverse. Plaintiff is a North Carolina corporation and has its principal place of business in Watauga County, N.C., whereas Defendant is a citizen of Broward County, Florida. (*See* Doc. 4/ Pls.' Motion to Remand, Exh. E at ¶ 1, 3). As a result, a portion of 28 U.S.C. § 1332(a)(1) is satisfied. Nevertheless, 28 U.S.C. § 1332(a) looks to 28 U.S.C. § 1446(c) to decide if removal is proper. First, considering the time constraint stated in 28 U.S.C. § 1446(c), of one year. On December 23, 2011, Plaintiff filed suit. (Doc 4/Pl. Amended Complaint Exh. B). On April 13, 2011,

Plaintiff filed an Amended Complaint. (*Id*. at Exh. E). On the same day, Defendant filed its Notice of Removal. (Doc. 1). Defendant timely filed his Notice of removal within 1 year of the commencement of the case. Therefore, Section 1446(c)(1) is satisfied.

In order to satisfy 28 U.S.C. § 1446(c)(2), this Court shall look at both the Amended Complaint and the Notice of Removal. The amount in controversy is not evident from Plaintiff's Amended Complaint or Motion for Remand. Plaintiff seeks declaratory judgment as to alleged violations of an employment agreement signed by both parties. Moreover, Plaintiff's Amended Complaint makes no monetary claims and does not assign a value to the asserted harms. Rather, Plaintiff's Amended Complaint only states that damages will be decided at trial. (*See id.* at ¶ 35). However, Defendant may overcome Plaintiff's pleading if the Notice of Removal asserts an amount in controversy. 28 U.S.C. § 1446(c)(2)(A). Yet, Defendant does not do so. Defendant's Notice of Removal makes no claims or allegations of diversity jurisdiction. Rather, Defendant only states that a federal question is presented pursuant to 28 U.S.C. § 1331. (Doc 1./Def.'s Notice of Removal at ¶ 6).

Moreover, Plaintiff may not have alleged a monetary judgment because North Carolina limits the amounts of recovery a Plaintiff may be awarded pursuant to N.C. Civ. P. § 1A-1, Rule 8. Rule 8(a)(2) states:

> …In all negligence actions, and in all claims for punitive damages in any civil action, wherein the matter in controversy exceeds the sum or value of ten thousand dollars ($10,000), the pleading shall not state the demand for monetary relief, but shall state that the relief demanded is for damages incurred or to be incurred in excess of ten thousand dollars ($10,000)…

N.C. Civ. P. § 1A-1, Rule 8(a)(2). Plaintiff's pleadings do not allege any monetary amount. It does not appear that it was Plaintiff's intent to circumvent the North Carolina Statute. If Plaintiff had deliberately failed to disclose the actual amount in controversy, this Court shall make a

finding that it was "deemed bad faith." 28 U.S.C. § 1446(c)(3)(B). This Court finds that Plaintiff did not deliberately fail to disclose an actual amount in controversy for any improper purpose.

Since Defendant has the burden of establishing federal subject matter jurisdiction, and could not point to allegations within Plaintiff's well-pleaded Amended Complaint or make a claim of diversity jurisdiction within the Notice of Removal pursuant to 28 U.S.C. § 1441(b), Defendant has not established that there is federal jurisdiction pursuant to 28 U.S.C. § 1441(b). Defendant had the opportunity to make a claim for diversity jurisdiction within the Notice of Removal and failed to seize the opportunity. The first time Defendant contended that diversity jurisdiction may exist pursuant to 28 U.S.C. § 1441(b) was within the Answer/Counterclaim. (Doc. 7).

In order to satisfy the requirements of removal under 28 U.S.C. § 1446(c), Defendant was required to point to an allegation within Plaintiff's well-pleaded Amended Complaint or make the argument within the Notice of Removal. Defendant did neither.

Therefore, subject matter jurisdiction is not satisfied under any theory, and the case should be remanded to state court.

## IV. ORDER

For all of these reasons, **IT IS HEREBY ORDERED** that ECRS' Motion for Remand is **GRANTED**. (Doc.4). **IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney's Fees and Costs (*id*. at Exh. F) pursuant to 28 U.S.C. § 1447(c) is **DENIED** in view of the fact that this Court, at least, needed more than a "brief examination of relevant authority" to determine the "well-settled principle" that federal jurisdiction did not exist. Accordingly, the

Deputy Clerk shall forward a copy of the case file, including the instant Memorandum and Order, to the Clerk of Court, Watauga County Superior Court, North Carolina.

Signed: April 23, 2013

Richard L. Voorhees
United States District Judge